**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| JOEL JEAN | : | |
| 2131 N. 58th Street | : | CIVIL ACTION |
| Philadelphia, PA 19131 | : | |
| | : | NO.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| o/a PHILADELPHIA POLICE | : | |
| DEPARTMENT | : | |
| 400 North Broad Street | : | |
| Philadelphia, PA 19130 | : | |
| and | : | |
| CAPTAIN SCOTT DRISSEL, JR. | : | |
| c/o CITY OF PHILADELPHIA o/a | : | |
| PHILADEPHIA POLICE DEPARTMENT | : | |
| 400 North Broad Street | : | |
| Philadelphia, PA 19130 | : | |
| | : | |
| Defendant. | : | |

_____:

## CIVIL ACTION COMPLAINT

Joel Jean (hereinafter referred to as "Plaintiff," unless indicated otherwise) hereby avers as follows:

## INTRODUCTION

1.    Plaintiff has initiated this action to redress violations by the City of Philadelphia o/a the Philadelphia Police Department and Captain Scott Drissel, Jr. (hereinafter collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA"- 29 USC § 2601), the Pennsylvania Human

Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff is proceeding herein under Title VII and the ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the

---

[1] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. Plaintiff's claims were dual filed with the PHRC, but those under the PHRA and PFPO will not administratively exhaust until they have been pending for 1-year. Plaintiff is required to file the instant lawsuit in advance, as he has been issued his right-to-sue letter from the EEOC. Plaintiff intends to amend his complaint to include PHRA and PFPO claims once those claims are administratively exhausted.

instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.       The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.       Plaintiff is an adult individual with an address as set forth in the caption.

8.       Defendant City of Philadelphia o/a the Philadelphia Police Department (hereinafter individually "Defendant City") is home to the nation's fourth largest police department, with over 6300 sworn members and 800 civilian personnel, with an address as set forth in the above caption.

9.       Defendant Captain Scott Drissel, Jr. (hereinafter individually "Defendant Drissel") was at all relevant times Captain status within Defendant City, was within Plaintiff's chain of command, and effectuated decisions with respect to the terms and conditions of Plaintiff's employment, as discussed further *infra*

10.      At all relevant times herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

11.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.      Plaintiff is a black (African-American) male.

13.      Plaintiff was hired by Defendants effective on or about March 8, 2010; and in total, Plaintiff has been employed with Defendants for over 12 years.

14.      Plaintiff remains currently employed by Defendants in the position of Police Officer 1 and has been at all relevant times herein, a full-time member of the Police Department.

15.     At all relevant times herein, Plaintiff has been generally supervised by Defendant Drissel, who oversaw the 12th District.   Plaintiff has also been supervised on a day-to-day basis by Sergeant Robin Himmons (African-American, hereinafter referred to as "Sgt. Himmons") until Plaintiff's discriminatory removal to the midnight shift (discussed in more detail *infra*) on or about January 11, 2021, and then by Sergeant Damon Linder (African-American, hereinafter "Sgt. Linder").

16.     Throughout his employment with Defendants, Plaintiff has been a hard-working employee who has performed his job well.

### -Race and Gender Discrimination-

17.     During his employment with Defendants, Plaintiff has been subjected to discrimination, retaliation, and a **very** hostile work environment because of his race and/or gender by Defendants' Caucasian management, including but not limited to Defendant Drissel.  By way of example, but not intended to be an exhaustive list, Defendant Drissel has:

     a.  Forcibly assigned Plaintiff to the midnight squad shift (11:00 p.m. – 7:00 a.m.), which is a huge hardship and very undesirable.  Moreover, it is an unspoken rule of Defendants' that once an officer has completed a midnight shift as a rookie (as Plaintiff did), the officer is not required to do a subsequent midnight shift later in their career;

     b.  Implemented a quota system directly or indirectly through pressure with regard to performance (which is *per se* unlawful in the Commonwealth of Pennsylvania – *see* 71 P.S. § 2001) which was enforced disparately for African-American and/or male employees as compared to Caucasian and/or female employees;

     c.  Caused Plaintiff to suffer unnecessarily two separate "Change of Squad Assignment" (set forth in more detail *infra*);

    d.    Falsely claimed Plaintiff engaged in "low activity" as a police officer (despite that Plaintiff had routinely handled more radio calls and coveted gun arrests than his Caucasian and/or female co-counterparts), which is negatively affecting the terms and conditions of Plaintiff's employment,;

    e.    Engaged in pretextual admonishment of Plaintiff;

    f.    Required Plaintiff to be "last out" on his shifts interfering with his familial and child-custody arrangements;

    g.    Engaged in preferential treatment of Caucasian and/or female officers (exclusive of Plaintiff); and

    h.    Denied Plaintiff awards which instead have been given to other similarly situated Caucasian officers, despite Plaintiff objectively having merited such awards.

18.    Plaintiff has attempted to escalate numerous complaints of discriminatory treatment including through his union and through numerous ranks of police personnel, to no avail, and Defendants have failed to engage any meaningful investigation or remedy.

19.    For example, following his transfer/assignment to the less favorable midnight shift, Plaintiff drafted a "Change of Squad Assignment" memo addressed Police Commissioner, Danielle Outlaw (hereinafter "Commissioner Outlaw").

20.    In this memo, Plaintiff stated that his transfer interfered with familial and child-custody arrangements and specifically complained that a "disproportionate" number of African American and/or male officers were being transferred to the midnight shit, while Caucasian male and/or female officers were permitted to remain in the more desirable 2 Platoon day shift.

Plaintiff's memo with a copy of his custody-order and supporting memo from Lieutenant Butts, were placed as a packet in a drawer labeled "Captain's Drawer"[2] in the operations room.

21.     On or about December 20, 2020, Sgt. Himmons informed Plaintiff that she had spoken to Defendant Drissel about Plaintiff's aforesaid "Change of Squad Assignment" memo, and that Defendant Drissel stated to Sgt. Himmons hostilely, "Is he trying to call me a racist?"

22.     Sgt. Himmons then asked Plaintiff "what do you want?" and "what is your goal?" in regard to the memo, and Plaintiff replied that he wanted his concerns addressed and to remain on his original daytime 2B squad assignment.

23.     Two days later, on or about December 22, 2020, Sgt. Himmons informed Plaintiff the reason he was being transferred to the midnight shift for the first time, and claimed it was due to low "activity," and that Defendant Drissel informed her that Plaintiff was the "lowest performer in the city," which is untrue, as upon information and belief, there were several Caucasian officers who had lower performance but had not been transferred out of their shifts.

24.      Plaintiff's memo to Commissioner Outlaw was then returned to him by Defendant Drissel with highlighted notes and an instruction to remove any mention of race discrimination and disparate treatment.

25.     Upon information and belief, Defendant Drissel did not present this memo to Commissioner Outlaw as he was required to do when following chain of command.

26.     On or about December 23, 2020, Plaintiff prepared another memo titled "Hardship Exemption," which was a heavily modified version of his "Change of Squad Assignment."  In this memo, Plaintiff excluded his complaint of race discrimination and disparate treatment, as he was led to believe this would lead to a better chance of remaining on his 2B shift if he did so.

---

[2] The chain of command dictates that Defendant Drissel move Plaintiff's memo up the ladder to the Police Commissioner.

27.     On or about January 6, 2021, Plaintiff met with Defendant Drissel, wherein Defendant Drissel admonished Plaintiff for his alleged low activity,[3] informed Plaintiff that his "Hardship Memo" was "delayed" but he would submit it to go up the chain of command, and that once he made a decision, it could not be overturned.

28.     Later that same day (January 6, 2021), Plaintiff contacted union representative John McCrody (hereinafter "McCrody") to file a grievance. However, McCrody discouraged him from filing a grievance against Defendant Drissel – stating that Defendant Drissel had informed him he would consider moving Plaintiff back to his 2B shift if Plaintiff got his "activity" (more ticket writing) up by March of 2021.  Plaintiff was frustrated as this required him to work the midnight shift for several more months based on purely discriminatory and false reasons.

29.     On or about January 7, 2021, Plaintiff contacted union representative Roosevelt Poplar (hereinafter "Poplar"), complaining that Defendant Drissel's attempt to enforce a quota for activity is "illegal and immoral."

30.     On or about January 11, 2021, on Plaintiff's first midnight shift, he made a gun arrest – they type of arrest that is highly commended by Defendants, more specifically Defendant Drissel.  Plaintiff reviewed Defendant Drissel's Twitter account where Defendant Drissel routinely praised Caucasian and/or female officers for gun arrests; however, there was no mention of Plaintiff's arrest, but Defendant Drissel's Twitter page contained several gun arrests made by Caucasian officers.

31.     On or about January 12, 2021 and January 19, 2021, Plaintiff made other gun arrests but again did not receive recognition on Defendant Drissel's Twitter feed; however, Sergeant

---

[3] Notably, Defendant Drissel never provided Plaintiff with any standard for his performance or "quota" that needed to be met to improve the same – most likely because quota systems are *per se* unlawful in the Commonwealth of Pennsylvania – *see* 71 P.S. § 2001.  Plaintiff has also never received any negative performance evaluations or counseling for alleged "low activity" or "poor performance."

David Carter (hereinafter "Sgt. Carter") advised Plaintiff that he would put him and a few other officers in for a Fraternal Order of Police ("FOP") Award.

32.     Throughout the month of April of 2021, Plaintiff reached out to McCrody on multiple occasions to check on the status of his request to transfer back to his original 2B squad shift, citing his recent performance and arrest records, as well as to let McCrody know his fiancé was suffering from post-partum depression following the birth of their son in March of 2021 (set forth in more detail *infra*), making the midnight shift a continued hardship for him.  McCrody informed Plaintiff only that he had not heard back from Defendant Drissel.

33.     On or about April 26, 2021, McCrody informed Plaintiff that he spoked to Defendant Drissel, who refused to reinstate Plaintiff back to his 2B squad shift, despite that Plaintiff's performance remained higher than several other Caucasian and/or female officers who had not been transferred to the midnight shift from their regular shifts.  McCrody then filed grievance on Plaintiff's behalf.

34.     On or about May 14, 2021, Defendant Drissel issued a memo to the 12th District Platoon Commanders, outlining the preferential treatment given to 7 Caucasian and/or female officers with regard to squad assignment.  Defendant Drissel noted 4 of these officers were given positions in a squad Plaintiff could have filled, while the 3 other officers were given their shift of choice "last out/midnight shift" to work with a certain supervisor they preferred.

35.     On or about May 16, 2021, Plaintiff spoke to Lieutenant Oronde Watson (hereinafter "Lt. Watson") regarding the status of the memo he submitted and requested to speak with Defendants' Southwest Inspector Deshawn Beaufort (*hereinafter* "Inspector Beaufort") about being returned to his 2B Squad Assignment in order to assist his fiancé in the evening and to care for and bond with his newborn son.   Lt. Watson responded only that he would "check with Defendant Drissel."  Thereafter on or about May 21, 2021, Lt. Watson advised Plaintiff to place

the signed memo in his mailbox.

36.     On or about May 27, 2021, Plaintiff overheard a discussion in the operations room, during which Sgt. Carter and Lt. Watson were discussing a female officer, Eyleen Archie (hereinafter "Archie") who had requested an earlier shift assignment based on a hardship request to care for her disabled son, which had been quickly granted by Defendant Drissel without issue.

37.     Upon information and belief, Archie had been originally transferred to the 12th district as a disciplinary measure for several write-ups (as a limited or restriction duty). Nonetheless, her transfer was granted despite that Plaintiff was informed limited or restricted duty would prevent any transfer, and his transfer remains denied despite his familial and child-support arrangements.

38.     On or about June 2, 2021, Lt. Watson returned Plaintiff's aforesaid memo to Inspector Beaufort as **denied outright** by Defendant Drissel and Inspector Beaufort without discussion.

39.     Plaintiff was thereafter left with little choice but to file for intermittent FMLA leave to assist with caring for and bonding with his newborn son (discussed further *infra*).

40.     On or about September 22, 2021, Defendant Drissel gave out several awards for gun arrests executed from in or about 2020 up until July of 2021; however, Plaintiff was upon information and belief the only officer who did not receive one, despite having executed *multiple* gun arrests during that time period, while several Caucasian individuals were given awards.

41.     This aforesaid antagonistic pattern of negative treatment (occurring daily and weekly) comprises a long-term, continuing hostile work environment (premised both upon discrimination and retaliation).

42.     Because of Defendant Drissel's continued harassing, retaliatory, and disparate treatment of Plaintiff, along with Defendants' failure to properly investigate and address Plaintiff's

aforesaid complaints of harassment and discrimination, Plaintiff began to suffer from increased feelings of depression, stress, and emotional distress.

43.     As a result of the aforesaid hostile work environment's detrimental impact on Plaintiff's mental and emotional health, he had no choice but to avail himself of Defendants' Employee Assistance Program ("EAP") counseling sessions and treatment, beginning in or about January of 2021.  Plaintiff has also sought treatment at Penn Behavioral Health.

44.     Nonetheless, Defendants' management continues to subject Plaintiff to a discriminatory and retaliatory hostile work environment, and Defendants have utterly failed to cease, mitigate, or lessen this conduct to date despite Plaintiff's multiple and repeated complaints and attempts at a remedy.

45.     For example, on or about October 16, 2021, Sergeant Daniel Gorman (Caucasian, hereinafter "Gorman"), a midnight supervisor, advised Plaintiff to submit another memo to request a return to Plaintiff's 2B squad assignment, which Plaintiff did.  However, on or about October 17, 2021, Plaintiff overheard Gorman and Sgt. Carter having a conversation about a prior supervisor meeting with Defendant Drissel (most likely on or about September 22, 2021), wherein they expressed they did not understand why Defendant Drissel is requiring activity for an in-district transfer for Plaintiff – particularly when, at a previous meeting, Defendant Drissel stated that it would not be a factor in Plaintiff's transfer.

46.     Additionally, while Defendant Drissel was transferred out of Plaintiff's district, in or about the end of 2021, prior to his transfer, Defendant Drissel *again* reassigned Plaintiff to another squad – 1C (which also conflicted with Plaintiff's familial obligations and child-custody arrangements), despite that he could have easily been transferred back to his 2B squad shift.

47.     Instead, in as last-ditch harassing, discriminatory, and retaliatory move toward Plaintiff before his own transfer, Defendant Drissel placed a far less senior and less qualified

Caucasian officer into the 2B squad shift (where Plaintiff originally worked and had been continually requesting to return).

48.     Thereafter, Plaintiff requested a transfer from his 1C squad shift back to his 2B squad shift or to swap with the Caucasian officer who had been placed in Plaintiff's original 2B squad to Defendant Drissel's replacement, Cpt. Joseph Green (Caucasian, hereinafter Cpt. Green) in or about March of 2022.  However, Cpt. Green (upon Plaintiff's information and belief at the behest of Defendant Drissel) has refused to transfer Plaintiff back to his 2B squad allegedly for continued "low activity" – Defendant Drissel's specific "buzz words" in his multiple aforesaid denials of Plaintiff's reinstatement to his original squad shift.

49.     During his aforesaid meeting with Cpt. Green, Plaintiff also complained that male officers are treated disparately from their female counterparts, who are transferred more readily and without issue.  By way of example, but not intended to be an exhaustive list:

   a.  Every year, new rookie offers are required to perform foot patrol, and upon Plaintiff's observations and beliefs, female officers are permitted to leave foot patrol to car patrol far earlier than their male counterparts;

   b.  Several female officers have been moved off the less favorable midnight shift, without issue, upon presenting hardship memos due to childcare, among other subjective preferences, while Plaintiff and other male officers have been required to jump through extensive hoops and then in large part denied; and

   c.  Female officers are overall given more favorable overtime and squad assignments and preference, despite as a whole, performing the same or less than their male counterparts.

50.     Plaintiff believes and therefore avers that he has been and continues to be subjected to a hostile work environment, disparate treatment, and placement in a less favorable and/or

11

demoted squads because of his race and/or gender and in retaliation for his complaints of race and/or gender discrimination.

### -Disability Discrimination/FMLA Violations-

51.     Separately and apart from the race and gender discrimination and retaliation that Plaintiff was subjected to during his employment with Defendants (discussed *supra*), Plaintiff was also subjected to discrimination based on his own and his fiancé's serious health conditions.

52.     In or about January of 2021, Plaintiff suffered off-duty injuries to his back, which resulted in pain, muscle spasms, and mobility issues.

53.     Despite his aforesaid health conditions and limitations, Plaintiff was still able to perform the duties of his job well with Defendants; however, he did require reasonable medical accommodations at times (discussed further *infra*).

54.     For example, following the onset of his aforesaid health conditions, Plaintiff was evaluated by his doctor who recommended that he remain out of work for 1-2 days, followed by light duty work in a desk position.

55.     Plaintiff provided a doctor's note to Defendants regarding his aforesaid limitations of light duty.

56.     Although Defendants accommodated Plaintiff's ability to work light duty desk work for several months until on or about November of 2021, Plaintiff continued to be subjected to disparate treatment, discrimination, and a retaliatory hostile work environment in the form of continued denial of his aforesaid requested transfer back to his 2B Squad assignment (set forth *supra*), while upon Plaintiff's information and belief, other non-disabled individuals were able to transfer where requested without issue.

57.     Additionally, as set forth *supra*, because of the aforesaid hostile work environment's detrimental impact on Plaintiff's mental and emotional health, he has had no choice

but to avail himself of Defendants' Employee Assistance Program ("EAP") counseling sessions and treatment, beginning in or about January of 2021.

58.     Plaintiff has also sought treatment at Penn Sleep Medicine and Penn Behavioral Health for sleep issues exacerbated by his aforesaid transfer to the midnight shift, requiring him to return to using a CPAP machine that he had not needed to use for several years.

59.     In addition to his own serious health conditions, on or about May 16, 2021, Plaintiff spoke to Sgt. Linder and Lt. Watson about his fiancé's postpartum depression (an ADA-qualifying disability), following the birth of their son in or about March of 2021.

60.     Specifically, as set forth *supra*, Plaintiff discussed the status of the memo he submitted requesting to speak with Defendants' Southwest Inspector Deshawn Beaufort about being returned to his 2B Squad Assignment in order to assist his fiancé in the evening and to care for and bond with his newborn son.   Lt. Watson responded only that he would "check with Defendant Drissel."

61.     Lt. Watson then responded later that same day (May 16, 2021), that Defendant Drissel had not heard anything back about Plaintiff's hardship memo and that Defendant Drissel stated hostilely and ambiguously that Plaintiff "did not hold up his end of the bargain" – upon Plaintiff's information and belief a clear retaliatory reference to Plaintiff's complaints of unfair and discriminatory treatment regarding Defendant Drissel.

62.     As a result of Defendant Drissel's concerted failure to consider Plaintiff's aforesaid hardship memo and continued harassment of Plaintiff by refusing to reconsider his discriminatory transfer of Plaintiff to the midnight shift, Plaintiff requested intermittent leave pursuant to the FMLA to care for and bond with his newborn son in or about early June of 2021.

63.     Despite that Plaintiff was eligible for FMLA leave to care for his son following his birth, Defendants' management, including but not limited to Defendant Drissel continued to

subject Plaintiff to a retaliatory hostile work environment by delaying and/or interfering with Plaintiff's approval of/ability to take FMLA leave.

64.     For example, on or about June 8, 2021, Plaintiff picked up his FMLA paperwork from Children's Hospital of Pennsylvania ("CHOP") and returned the paperwork with a memo as required to Pat (last name unknown, *hereinafter* "Pat") in Defendants' Personnel Department.

65.     Pat instructed Plaintiff to turn in his prepared memo regarding his need for FMLA leave for to care for his newborn son to Defendant Drissel.

66.     On or about June 11, 2021, Sgt. Linder texted Plaintiff that Defendant Drissel's office needed to know if he had turned in his FMLA paperwork to Personnel, to which Plaintiff responded "yes."

67.     On or about June 23, 2021, Plaintiff received a phone call from Katrina Giddings (hereinafter "Giddings"), wherein she informed Plaintiff that she had received a call from personnel stating they never received his FMLA request memo.

68.     In response to Giddings aforesaid request regarding Plaintiff's FMLA memo, he responded that Sgt. Linder had spoken to another employee who confirmed that they received the memo.

69.     Defendant Drissel's continual retaliatory and discriminatory behavior as a result of Plaintiff's complaints of race and gender discrimination and retaliation, requests for accommodations, including FMLA leave, resulted in a delay of several weeks in the approval of Plaintiff's FMLA leave to care for and bond with his newborn son.

70.     Following his request for/utilization of FMLA leave to care for and bond with his newborn son, Defendants' management has continued to subject Plaintiff to discriminatory, harassing, disparate, and retaliatory treatment, including but not limited refusing to reinstate him to his original 2B day squad assignment without providing any legitimate basis.

14

71.     Plaintiff believes and therefore avers that he has been and continues to be subjected to a hostile work environment, disparate treatment, and retaliation because of (1) his known and/or perceived disabilities, (2) his record of impairment; (3) his requests for reasonable accommodations, including but not limited to light duty work and FMLA leave; and (4) for reasons associated with his fiancé's serious health conditions.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against Defendant City Only-**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     During Plaintiff's employment with Defendant City, he has been subjected to discrimination, retaliation, and a hostile work environment through disparate and retaliatory treatment as outlined *supra* because of his race.

74.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant City's management on several occasions, but his concerns were ignored, and Defendant City's management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of his race.

75.     Plaintiff believes and therefore avers he has been and continues to be subjected to a hostile work environment, disparate treatment, and placement in a less favorable and/or demoted squads because of his race and/or gender and in retaliation for his complaints of race discrimination.

76.     These actions as aforesaid constitute violations of Title VII.

## COUNT II
## Violations of 42 U.S.C. Section 1981
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
### -Against Both Defendants-

77.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78.     During Plaintiff's employment with Defendants, he has been subjected to discrimination, retaliation, and a hostile work environment through disparate treatment as outlined *supra* because of his race.

79.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendants' management on several occasions, but his concerns were ignored, and Defendants' management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of his race.

80.     Plaintiff believes and therefore avers he has been and continues to be subjected to a hostile work environment, disparate treatment, and placement in a less favorable and/or demoted squads because of his race and/or gender and in retaliation for his complaints of race discrimination.

81.     These actions as aforesaid constitute violations of Section 1981.

## COUNT III
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Defendant City Only-

82.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

83.     During Plaintiff's employment with Defendant City, he has been subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of his gender.

84.    Plaintiff has been treated disparately with regard to work, policies, and scheduling contrary to his female co-workers.

85.    Plaintiff has complained of discriminatory conduct and hostile work environment that he has been subjected to because of his gender to Defendant City's management.

86.    Instead of investigating Plaintiff's aforesaid complaints of gender discrimination, Defendant City's management has ignored them and left his legitimate concerns unresolved.

87.    Following his complaints of gender discrimination (discussed *supra*), Plaintiff continued to be subjected to harassment and discriminatory conduct.

88.     Plaintiff believes and therefore avers he has been and continues to be subjected to a hostile work environment, disparate treatment, and placement in a less favorable and/or demoted squads because of his gender and in retaliation for his complaints of gender discrimination.

89.    Defendant City's actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment in violation of Title VII.

### COUNT IV
### Violations of the American's With Disabilities Act ("ADA")
([1] Disability Discrimination; [2] Retaliation and [3] Hostile Work Environment)
-Against Defendant City Only-

90.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91.    Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

92.    Plaintiff kept Defendant City's management informed of his serious medical conditions and need for medical treatment and other accommodations.

93.    Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant City; however, Plaintiff did require reasonable accommodations at times.

94.     Plaintiff requested intermittent leave for doctor's visits, counseling, and to care for his aforesaid health conditions, as well as light duty work.

95.     Plaintiff has been subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of his disabilities and requested accommodation.

96.     Plaintiff believes and therefore avers he has been and continues to be subjected to a hostile work environment, disparate treatment, and placement in a less favorable and/or demoted squads because of (1) his known and/or perceived disabilities; (2) his record of impairment; and (3) his requested accommodations (discussed *supra*).

97.     These actions aforesaid constitute violations of the ADA.

**COUNT V**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**(Associational Disability Discrimination)**
**-Against Defendant City Only-**

98.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99.     Plaintiff's fiancé suffered from qualifying health conditions under the ADA, including but not limited to post-partum depression.

100.    Defendant City knew of Plaintiff's fiancé's disabilities at all relevant times herein.

101.    Upon information and belief, Plaintiff believes and avers that he has subjected to a hostile work environment and denied the ability to transfer back into his 2B squad day assignment for: (a) being perceived as distracted for dealing with his fiancé's health problems in and outside of work; and (b) for other reasons in association with his fiancé's health problems.

102.    These actions as aforesaid constitute violations of the ADA, as amended.

**COUNT V**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**
**-Against Both Defendants-**

103.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

104.    Plaintiff is an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

105.    Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

106.    Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

107.    Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

108.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

109.    Plaintiff has been subjected to a hostile work environment following his request for/utilization of intermittent FMLA-qualifying leave to care for and bond with his newborn son.

110.    Defendants committed interference and retaliation violations of the FMLA by subjecting Plaintiff to discriminatory, harassing, and disparate treatment (1) for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) intimidating him and/or trying to prevent him from taking FMLA-qualifying leave in the future; (3) by making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; and/or (4) by failing to reinstate him to his original 2B squad day assignment.

111.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.     Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  October 3, 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

CIVIL ACTION

Joel Jean

v.

City of Philadelphia o/a Philadelphia Police Department, et al.

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| 10/3/2022 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _2131 N. 58th Street, Philadelphia, PA 19131_

Address of Defendant: _400 North Broad Street, Philadelphia, PA 19130_

Place of Accident, Incident or Transaction: _Defendants place of business_

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _10/3/2022_   _____   _ARK2484 / 91538_
                         *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Ari R. Karpf_ , counsel of record *or* pro se plaintiff, do hereby certify:

☒  Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐  Relief other than monetary damages is sought.

DATE: _10/3/2022_   _____   _ARK2484 / 91538_
                         *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JEAN, JOEL | CITY OF PHILADELPHIA O/A PHILADELPHIA POLICE DEPARTMENT, ET AL. |
| **(b)** County of Residence of First Listed Plaintiff  Philadelphia  *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  Philadelphia  *(IN U.S. PLAINTIFF CASES ONLY)*  NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*  Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Personal Injury | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | Liability | | 840 Trademark | 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise | 362 Personal Injury - Medical Malpractice | | | 865 RSI (405(g)) | 891 Agricultural Acts |
| | | | 790 Other Labor Litigation | | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | [X] 442 Employment | 510 Motions to Vacate Sentence | | | |
| 240 Tort to Land | 443 Housing/ Accommodations | 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981); ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the Title VII, Section 1981, ADA, FMLA, PHRA and the PFPO.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  10/3/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | Reset |